THE FARMERS AND MECHANICS BANK OF FREDERICK CO., THE BANK OF WESTMINSTER, AND ANNE JONES *vs.* HENRY WAYMAN AND RICHARD G. STOCKETT.—*December*, 1847.

In April, 1826, *I.* transferred to *R.* and *H.*, trustees under the will of *L.*, for the benefit of *A.* wife of *S.*, during her natural life, and after her death in trust for the infant devisees in said will, and pursuant to an order of the Chancellor of 20th January, 1826, certain shares of the capital stock of the *Bank of W.* The books of the bank showed the transfer as above. The bank was incorporated at *W.* in 1815, and in 1821 was authorized to establish an office at *F.* In 1827, the principal bank was transferred by law to *F.*, with a branch at *W.*; the officers at *W.* furnished a list of stockholders to those at *F.*, by which it appeared that the stock stood in the name of *A.* wife of *S.* In 1829, these institutions were declared separate and independent corporations, and in 1830, the stock standing at *F.* in the name of *A.* wife of *S.*, *was by them* sold and transferred to an innocent third party, without the knowledge of *R.* and *H.* the trustees. After this *S.* died; *A.* administered upon his estate; and it coming to the knowledge of *H.*, one of the trustees, that the bank stock at *W.* had been transferred and sold by *S.* and wife, he applied to her, and she paid him in 1833, through the surviving partner of her husband, $1000, and in 1842 delivered him certain stocks, then of value as a payment or security for the trust funds disposed of as aforesaid. Some of the stocks turned out of no value. Upon a bill filed against the banks at *W.* and *F.*, the widow and administratrix of *S.* and the purchasers of the stock by *R.* and *H.*, &c. to repair the injury done the trust, *Held,*

1. That *H.*, one of the trustees, having received money and stocks on account of the trust, and being thus liable to account with the trust estate, could not as complainant be entitled to a decree without such accounting.

2. Equity may oblige a complainant to assume the position of a defendant, that justice between the parties may be effectuated; and where the case justifies it, will decree at once without waiting for such change of position.

3. As it did not clearly appear whether the stocks transferred by *A.* to *H.* were in payment, or by way of security, this court considered it premature to decree upon those subjects, but left them for further investigation in the court of Chancery, as well in relation to the principal fund as the interest.

4. The co-complainant and trustee, *R.*, may recover from the administratrix of *S.* in due course of administration, to the extent of assets which have come to her hands, such sum as he may be unable to recover from *H.*

5. The injury which the trust estate has sustained, will be repaired by the payment of a sum equivalent to the price at which the stock was sold, when the transfer was made by *S.* and wife.

6. Such sum should be invested for the benefit of the *c. q. t.* under the will of *L.*

7. For *A.*'s participation in the transfer of the stock, as she was a *feme covert*, under the dominion of her husband, she incurred no penalty or forfeiture of her right as *c. q. t.* for life. She claimed nothing on account of interest; and

there is no reason why the estate if repaired, may not be increased for the benefit of those in remainder.

Forfeitures are not viewed in a favorable light by a court of equity.

After the accounting by *H.*, and by *A.* as administratrix of *S.*, such a sum shall not be found due from both, as with the funds in court will be sufficient to re-instate the trust estate to the amount of the stock transferred by *S.* and *A.*, then the balance necessary to accomplish this object should be paid by the two banks; and if the decree against *H.* and *A.* should be unavailing to the *c. q. t.* the amount for which they shall be decreed to pay, then the said banks ought to be held responsisible for any deficiency that may occur.

Where by a transfer on the books of a bank, the corporation has notice of the trusts with which certain shares of its stock were clothed, and that the complainants were the legal proprietors thereof, the officers of such corporation being trustees of the stockholders cannot, without its being responsible, by any negligence or mistake allow the title to pass to the stock in a transfer by any other person than the trustees.

By the act of 1826, ch. 107, sec. 12, it was directed that books should be kept at *F.*, in which should be fairly entered the names of the stockholders, the amount of stock belonging to each, and that transfers should be made on the books of the bank on proper application by the stockholders. Such a stock list was not kept by the bank; and in consequence of which, the bank as it was then incorporated, consisting of the mother bank at *F.* and its branch at *W.* would have become responsible for any injury which had proceeded from such neglect.

Such a liability having been incurred, the act of 1829, ch. 35, which separated the mother bank and its branch into two independent corporations, does not destroy it.

Each, after the separation, ought to be held liable in equity for the prior neglect of duty, and in proportion to the capital of each; neither, present bank, can throw the whole loss upon the other.

Where there is no knowledge in the trustees of the violation of an express trust, nor in the *cestui que trusts*, no acquiescence can be imputed to them, and hence, lapse of time is no bar in favor of those guilty of such violation.

Where trustees were properly proceeding against parties, who by negligence had permitted the trust funds to be converted, and alienated to innocent and irresponsible parties, the costs incurred by them ought to be allowed out of the trust fund, though the decree was reversed for error in the extent and primary liability of some of the defendants, still it was without costs to them.

This court by the act of 1841, ch. 163, is prohibited from allowing any objection to be urged to the jurisdiction of the court of Chancery, when no such objection was there taken.

APPEAL from the Court of Chancery.

The bill in this cause was filed by the appellees on the 6th August, 1841, and alleged, that by an order of the Chancellor

43    v.5

of the 20th January, 1826, and passed in a cause in this court depending, wherein one *Samuel Jones of Joshua*, since deceased, and *Anne* his wife, were complainants, and your present orators, as trustees and executors of the last will of one *Larkin Shipley*, deceased, were defendants, your present orators were directed and required, unless cause should be shown to the contrary, as thereby allowed, to invest a certain sum of money at that time in this Honorable court, to the credit of said cause, in stock of the *Bank of Westminster*, the said stock to be transferred unto and held by and in the name of the said trustees, for the uses, intents and purposes in the proceedings mentioned, and the interest and dividends thereon, as the same may become due and be collected, shall be paid by them unto the said *Anne*, the wife of the said *Samuel*, during her natural life, and after her death the said bank stock shall be disposed of and pass as is directed by the last will and testament of the said testator; that no cause to the contrary having been shewn, and your orator, *Stockett*, having suggested that he had in hand an additional sum of $1900 belonging to said estate, your Honor by an additional order in the cause, dated on the 18th March, 1826, authorised and directed your present orators, the trustees, to invest the said additional sum of money in stock of the *Bank of Westminster*, upon the terms and as is prescribed by the aforesaid order of the 20th January aforesaid, and the said order is thereby declared to be absolute, and the said trustees are directed to invest the said sums of money accordingly; that in obedience to the aforesaid orders, they did purchase 222 shares of the capital stock of the *Bank of Westminster*, and did procure the same to be transferred unto them as directed by said orders, and having filed their report thereof, your Honor by another order passed in the cause on the 20th April, 1826, ratified and confirmed as by the aforesaid orders and other proceedings in said cause, and now, &c.; that upon *the face of said transfer, the fiduciary character* of your orators as transferrees, and the authority under which they acted, were fully apparent; that the said *Bank of Westminster* was incorporated and established in the town of *Westminster*, in *Frede-*

*rick* county, by an act of the General Assembly of *Maryland*, passed at December session, 1815, ch. 75, and that by one other act of said General Assembly, passed at its December session, 1821, ch. 42, the said Bank was authorised to establish an office of pay and receipt at *Frederick* town in said county, and that by one other act of the said General Assembly, passed at its December session, 1826, ch. 107, the name of the principal Bank is changed to that of the *Farmers and Mechanics Bank of Frederick County*, and is transferred to the city of *Frederick*, and a branch thereof is continued at *Westminster*, as by said acts will appear, and your orators are further informed and so charge, that under the powers conferred on the said corporation by the said acts of Assembly, the transfer books and stock books thereof are placed under the control of the said principal Bank, and that the corporation is now liable to be sued by your orators by its name of the *Farmers and Mechanics Bank of Frederick County.*

And your orators charge that the conjugal relations subsisting between the said *Samuel Jones of Joshua*, and *Anne* his wife, being perfectly cordial, your orators for their convenience permitted the said *Jones and wife* from time to time to draw the dividends declared on said stock, and believing that the stock itself was perfectly secured by the special terms of the aforesaid transfer thereof from any transfer or other application thereof, without the order of this court, they have not intermeddled therewith in any manner. But now so it is; your orators having heard that said stock had been sold by the said *Samuel Jones of Joshua* in his lifetime, and by him actually transferred, forthwith applied for information on the subject thereof unto the present cashier of the *Bank of Westminster*, from whom they received the letters marked Exhibits A. and B., and in conformity with his suggestion, having addressed a letter of inquiry to the cashier of the *Farmers and Mechanics Bank of Frederick County*, they received in answer from him the letter marked Exhibit C., all which, &c. These letters are all addressed to *Thomas S. Alexander*, who had, as solicitor for your orators, made the applications aforesaid to the

said cashiers, and from all these letters it appears that the said Bank now pretends that on the 14th June, 1830, the said stock was transferred by the said *Jones and wife* as follows, to wit: one hundred shares thereof unto one *William M. B. Wilson,* one hundred shares thereof unto *John J. Wilson,* and twenty-two shares thereof unto one *Jonathan J. Wilson,* unto whom the dividends declared on said stocks ever since the date of said transfers, have been regularly paid.

And your orators aver that no order hath ever been passed by your Honor for the transfer of the said stock, or any part thereof, nor were your orators, or either of them, in any way, directly or indirectly, parties or privies thereto; on the contrary, they aver that they had no notice whatsoever, that any such transfer was made, until within a very few weeks prior to the date of their aforesaid Exhibit A.; and indeed your orators discovered by referring to said exhibits, that the transfer was made by the said *Jones and wife,* not as pretended agents of your orators, but under color of some title in themselves so to do. But your orators are advised to deny the title of said *Jones and wife,* or either of them, so to intermeddle with said stock, and to insist that the transfer so as aforesaid made unto your orators was without notice, &c.; and that the said corporation or the said present transferrees ought to account unto your orators for the dividends declared on said stock since the date of said transfers; that the said *Samuel Jones of Joshua,* and *Anne* his wife, had lawful issue—five children— to wit: &c., all of whom are now living and are under the age of twenty-one years, and that said persons, if living at the death of the said *Anne Jones,* will be entitled to the aforesaid principal stock under the provisions of the last will and testament of the said *Larkin Shipley,* deceased, and that the said *Samuel Jones of Joshua,* departed this life sometime in the year eighteen hundred and thirty, intestate, and that administration on his personal estate hath been duly granted by the Orphans court of *Baltimore* county, unto his widow, *Anne Jones* aforesaid, who hath in virtue thereof possessed herself of personal estate to an amount more than sufficient to dis-

charge the claim which your orators may have against said estate by reason of the aforesaid fraud, and your orators are advised, that if from any cause whatsoever they should be disappointed in obtaining relief as against the said corporation and transferrees, as hereinbefore claimed, they ought at least to have relief as against the said *Samuel Jones,* or his estate, in the hands of his administratrix, for the value of said stock at the time the same was transferred as aforesaid, and the dividends or interest on said stock or value.

Prayer that the transfers of stock may be declared fraudulent and void; that said stock may be decreed to be retransferred unto your orators, and that the said Bank and the said transferrees may be required to account with your orators for all dividends declared on said stock since the date of said transfers, or in case the said transfers shall be held to be valid, then that your orators may be decreed to have satisfaction out of the estate of the said *Samuel Jones of Joshua,* in the hands of his administratrix, for the value of the aforesaid stock, so as aforesaid converted by him, and that your orators may have such other and further relief as their case may require; and for subpœna against the said *Farmers and Mechanics Bank of Frederick County, William M. B. Wilson, John J. Wilson* and *Jonathan J. Wilson, Anne Jones,* and infant children of *Samuel Jones,* &c.

### Complainants' Exhibit A.

*Bank of Westminster,* July 1st, 1841.

Sir:

On examination I have not been able to find the names of either *Henry Wayman* or *Richard G. Stockett,* on the books of this Bank as stockholders or otherwise.

Yours most respectfully,     John Fisher, *C'r.*

*Th. S. Alexander, Esq., Annapolis, Md.*

### Complainants' Exhibit B.

*Bank of Westminster,* July 9th, 1841.

Dear Sir:

On the receipt of your first letter, I examined the stock leger and dividend books, in which the names of the stock-

holders are entered, and the names of *Rich'd G. Stockett* and *Henry Wayman*, trustees, do not appear on either of these books, and they are the only books to which we refer for the names of stockholders. On the receipt of your letter of the 5th inst., in which you say that *Joshua Jones* transferred the stock, and also give the date of transfer and number of shares, I referred to the stock account of *Mr. Jones* on the stock leger, and find that he transferred on the 8th day of April, 1826, to *Anne Jones*, wife of *Samuel Jones of J.*, 222 shares of stock. When I found that the date and number of shares of stock agreed with your statement, I referred to the transfer book, to which we never look for the names of stockholders, and there find the transfer to which you refer, a copy of which I annex. The stock was entered on the stock leger and dividend book in the name of *Anne Jones*, wife of *Samuel Jones of J.*, and not *Rich'd G. Stockett* and *Henry Wayman*, trustees, as from the transfer it would appear it should. Soon after this transfer was made, there was an alteration in the charter of this Bank, by which it was made the *Branch of the Farmers and Mechanics Bank of Frederick Co.*, and this stock was transferred to the mother Bank at *Frederick*. If there has been any transfer of the stock, it must have been done since it has been under the control of the *Bank at Frederick*. You can get this information by application to *Wm. Beall, Esq., Cash'r, Frederick*. If you apply to him, you should state that the stock stood in the name of *Anne Jones*, wife of *Samuel Jones of J.*, or he will not be able to give you the information required.    Yours very respectfully,

JOHN FISHER, *C'r.*

*Th. S. Alexander, Esq., Annapolis, Md.*

COPY. 308. For value received, I do hereby assign and transfer to *Richard G. Stockett* and *Henry Wayman*, trustees, under the last will and testament of *Larkin Shipley*, for the benefit of *Anne Jones*, wife of *Samuel Jones of Joshua*, during her natural life, and after her death in trust for purposes prescribed in said will, and pursuant to an order of the Chancellor, dated the 20th January, 1826, two hundred and twenty-

two shares of the capital stock of the *Bank of Westminster*, standing in my name on the books of said Bank, on which fifteen dollars has been paid on each share.    April 8th, 1826.

    Witness.                                Signed—JOSHUA JONES.
    Signed—*J. C. Cockey.*

COMPLAINANTS' EXHIBIT C.

*Farmers and Mechanics Bank of Frederick Co.,*
*Frederick*, July 14th, 1841.

Dear Sir:

    I have to state in reply to your favor of the 13th inst., that at the time the separation took place between this institution and its branch at *Westminster*, the stock belonging to *Anne Jones* was under the act of separation, continued in this Bank in the name of *Anne Jones*, wife of *Samuel Jones*. On the 14th June, 1830, the whole stock was sold and transferred by said *Samuel Jones* and *Anne Jones* his wife, to the following persons, to wit:

| | |
|---|---:|
| *Wm. M. B. Wilson,* | 100 shares. |
| *Jno. J. Wilson,* | 100 " |
| *Jonathan T. Wilson,* | 22 " |
| | 222 |

Each transfer was signed by *Jones and wife.*

    The stock has always stood in the name of *Anne Jones*, wife of *Samuel Jones*, on the stock leger and on the dividend book, and I presume was so transferred by *Joshua Jones*, and not transferred by him to the trustees mentioned in your letter.

    Yours very respectfully,            WM. BEALL, *C'r.*
*Th. S. Alexander, Annapolis, Md.*

    The answer of the *Farmers and Mechanics Bank of F. C.* alleged that as to those parts of the said bill which speak of former proceedings in this court, in which *Samuel Jones of Joshua*, and *Anne* his wife, were complainants, and the now complainants as executors of *Larkin Shipley*, were defendants, and of the several orders and proceedings had in the said cause, this defendant has no actual knowledge, and prays leave to refer to the said proceedings themselves as the best evidence

of their contents, and of the legal or equitable rights of the parties therein named; that on the 8th April, 1826, a transfer was made by *Joshua Jones* to the complainants of, &c.; that the copy of said transfer annexed to his Exhibit B. is a true copy thereof; that the *Bank of Westminster*, incorporated by the act of 1815, was established as alleged in the bill, and that by the act of 1821, the said Bank was authorized to establish an office of pay and receipt in *Frederick* town, and that by the act of 1826, the name of the said corporation was changed to that which it now bears, and the principal Bank transferred to the city of *Frederick* in the spring of the year 1827, with a branch thereof at *Westminster*. And this defendant for further answer says, that in execution of the said last mentioned act, the then cashier of the institution at *Frederick* town, on or about the 14th March, 1827, requested the then cashier of the institution at *Westminster* to furnish him with a copy of the list of stockholders, which was accordingly sent to the cashier of the Bank at *F. T.*, on or about the 22d of the same month and year; that upon the receipt of this stock list by the Bank at *F. T.*, a stock leger was opened in said Bank, wherein each stockholder named in said list was credited with the amount of stock appearing by said list to be standing in his or her name. That it appeared in and by said list so furnished by the cashier of the branch of the said Bank at *W.*, that *Anne Jones*, wife of *Samuel Jones*, was a stockholder to the amount of two hundred and twenty-two shares, upon each of which the sum of fifteen dollars had been paid, and accordingly in the stock leger before mentioned, the said shares were passed to her credit; that from the period of the establishment of the *office of pay and receipt* at *F. T.* as aforesaid, until the alteration before mentioned was made in the name of the corporation, and it assumed that of the *F. and M. B. of F. C.* in virtue of the act of 1826; the said office was furnished by the parent Bank at *W.* immediately upon the declaration of each dividend, with a list called the dividend list or dividend sheet, containing the names of the stockholders, the number of shares held by each, and the amount of dividend due each stockholder respectively. That from the

period of the transfer as aforesaid by *Joshua Jones*, until the location of the mother Bank at *F. T.*, the name of *Anne Jones* alone appeared on said lists as a stockholder, and during the same period all dividends declared upon the said stock were paid at the Bank in *W.*, as they continued to be up to the dividend of November, 1829, inclusive, and that the only dividend paid upon the said shares until after their transfer, as hereinafter mentioned, was that declared in May, 1830, which was paid to *Samuel Jones of Joshua*, the husband of the said *Anne Jones*, on the 11th of the then following month of June. And this defendant further answering says, that by an act of the General Assembly of this State, passed in the year 1829, the parent Bank of the said Bank at *F.*, and the branch thereof at *W.* were created and declared separate and independent institutions, upon the terms and conditions therein prescribed, certain of the stockholders of the said institution previously existing, being by the said act declared to be a body corporate and politic, by the name and style of the *F. and M. B. of F. C.*, and certain others of the said stockholders being likewise by the said act declared to be also a body politic and corporate by the name and style of the *Bank of Westminster*, as upon reference to the said act will more fully and at large appear; that the copy of the stock list furnished as before mentioned by the cashier of the Bank at *W.* to the cashier of the Bank at *F.*, and the dividend list or dividend sheet furnished from time to time as aforesaid were the only documents ever received by the latter institution, from which it could have derived or had the means of ascertaining the names of the stockholders. That the original transfer book opened whilst the parent Bank was at *W.*, and in which alone the true character of the transfer of the stock in question was to be found, has always been and is still in that institution; that under all the aforegoing circumstances, they had a right to consider, and in truth were bound to consider the said *Anne Jones*, wife of *S. J. of J.*, as the absolute and unrestricted owner of the said stock, with full power and authority to transfer the same, with the concurrence of her said husband. That accordingly on or about the 14th

June, 1830, the said stock was transferred by the said *S. J. of J.* and *A.* his wife, to the following persons, that is to say, one hundred shares to *Wm. M. B. Wilson,* &c.; that these transfers were made in the mode usual at this Bank, in virtue of written powers for that purpose, signed by the said *Samuel Jones* and *Anne Jones;* and this defendant most positively avers that at the time said transfers were made, it had no knowledge, nor had any of its officers or servants any knowledge that the complainants, as trustees or otherwise, or any other person or persons had any interest in or control over said stock; and this defendant further says, that though *Henry Wayman,* one of the complainants, soon after the transfer to the said *Wilsons* as aforesaid, called at the banking house of this defendant, and manifested some anxiety when informed of the said transfers, the actual nature of the transaction was not then disclosed by him to the officers and servants of this defendant, who until recently remained in ignorance thereof, the error, if one has been committed, was caused by the acts of the officers of the parent Bank when it was located at *Westminster,* where the evidence to correct the same has always hitherto been and still remains; and this defendant is advised and insists, that as the stockholders of the *F. and M. B. of F. C.,* its officers and agents, had no agency in or were in any way instrumental in the acts complained of, they cannot be held responsible for the same. This defendant admits the death of *Samuel Jones of Joshua* in the year 1830, but they know nothing of the number or names of the children left by him, nor what their rights under the will of *Larkin Shipley* will be after the death of the said *Anne Jones.* This defendant does not know what personal estate the said *Anne Jones* possessed herself of as administratrix of the said *Samuel Jones;* but if, as the complainants allege, the amount of said personal estate is sufficient to discharge the complainants' claim, growing out of the transactions hereinbefore referred to, the remedy of the said complainants, if they have any, would properly be directed against her. And this defendant admits, that since the date of the transfer of said stock to *Wm. M. B. Wilson,* &c., the dividends

declared thereupon have been paid to them. And to so much of the said bill as prays for an account of the dividends which have been declared upon the said stock since the said transfer, this defendant insists that the complainants are entitled to no such relief during the lifetime of the said *Anne Jones*, the said dividends being applicable to her benefit during her lifetime, as appears upon the face of the transfer made by said *Joshua Jones*, and she herself having united in the transfer to the said *Wilsons*. But if the Chancellor should think otherwise, and require an account from this defendant of such dividends, then this defendant pleads and relies upon the act of limitations as a bar to all the said dividends which were declared or paid more than three years before the filing of the present bill; and this defendant prays that he may have the full benefit of said plea at the final hearing of this cause, &c.

With the answer was exhibited several schedules, which are unnecessary to be inserted.

The bill was then amended so as to make the *Bank of Westminster* a defendant, a separate institution from the other defendant, as stated in the opinion of this court.

The answer of *Anne Jones* admitted the investment under the orders of the court; the existence of the Banks in their original and separated capacities; the acts of Assembly in relation to said Banks; the receipt of dividends on the said stock by her husband *Samuel;* that she administered upon his estate; that she knows nothing of any transfer of said stock, except that on one occasion, she thinks sometime in or about the year 1830, being with her said husband in the city of *Frederick*, he told her that he had some stock in the Bank there and wished her to go to the Bank and sign her name, adding that it would be an advantage to him and their family, and that he would make it good when they got home, and that she did accordingly repair with him to the Bank and sign her name in a book, but without knowing what stock it was in relation to which he spoke, or that it was the stock in which she had an interest in the *Bank of Westminster*, or asking any questions in relation to the same, and that her said husband never afterwards men-

tioned the subject to her.   And this respondent further answering says, that since her husband's death, which took place in the autumn of the year 1831, she has found among his papers, one of which, that herewith annexed, marked defendant's Exhibit A. J., No. 1, is a copy, but that she never saw the same, nor was its existence communicated to her in his lifetime; that there have been no assets of said estate received by her except those above set forth, and except also some stock in one of the Banks in *Baltimore*, and in a Savings Institution there, which stock was claimed by one of the complainants as part of the trust fund, and has been accordingly transferred to, and as she is informed and believes is now held by them, and she denies therefore the existence of assets to meet the claim set up by the said bill; that the notice required to be given by law to parties having claims against said estate, was by her duly given, and that no debts or claims were either known or notified to her to exist against said estate at the time of the payment and distribution by her as aforesaid; that she denies all fraud, and in bar to the relief prayed, relies and insists as well on the great lapse of time since the transfers therein mentioned and alleged to be fraudulent and void, were made, as upon an act of the General Assembly of the then province, and now State of *Maryland*, passed at April session, 1715, chapter 23, entitled an act for limitation of certain actions for avoiding suits at law, and craves to have the benefit of said statute, and of such lapse of time as if the same had been fully and formally pleaded.

DEFENDANT'S EXHIBIT A. J., No. 1.

$3100.   On demand we promise to pay to *Mrs. Anne Jones*, (wife of *Samuel Jones of J.*) or order, the sum of three thousand one hundred dollars with interest, for value received.

JONES & HARDESTY.

This note was given for money that I received for stock sold in the *Farmers and Mechanics Bank of Frederick County*, belonging to my wife, and is quite separate from the business of the firm; and this memorandum is taken in case of death,

that is, the money was loaned to the firm on interest, to be returned on demand, and properly *R. J. Stockett* and *Henry Wayman* as trustees to my wife, have the right to receive the same, and invest it for the benefit of my wife according to the will of *Larkin Shipley,* deceased.     SAM'L JONES OF J.

The purchasers of the stock also answered the bill.

The answer of the *Bank of Westminster* denied all fraud— relied on the lapse of time—staleness of the demand, and act of limitations—admitted the various changes affecting the two institutions—insisted upon want of notice and irresponsibility under the circumstances of the *Bank of Westminster* for the transfer by *Samuel Jones.*

The bill was afterwards amended so as to make *Richard G. Hardesty,* a former partner of *Samuel Jones,* deceased, a party in consequence of the allegations in the answer of *Anne Jones,* that he had assets of *Samuel* in his hands, and that the partnership of *Jones & Hardesty* was also bound for the proceeds of this stock according to the memorandum filed with her answer, but it appearing that he had settled with the administratrix and procured a release from her, the bill as to him was dismissed.

A supplemental answer of *Anne Jones* duly filed, alleged that after the death of her husband, the complainant, *Wayman,* informed her that her husband had undertaken to furnish him with twenty-seven shares of *Farmers and Merchants Bank* stock, and had received from him on the faith of such engagement, an amount of trust funds belonging to the complainants sufficient for their purchase, but that he had failed to transfer the stock in his lifetime, and she was bound to make good his said undertaking. This respondent further saith, that having shown to the said *Wayman* not long after her husband's death, the note of *Jones & Hardesty,* referred to in her original answer, he said that the affair which it disclosed would injure her husband's memory, and that she must give him some stocks as a security, which he learned belonged to the estate of her husband. This respondent further saith, that upon the representations and at the request above mentioned of the said *Henry Wayman,*

she did on the 13th March, 1842, transfer 40 shares of stock in the *Maryland Savings Institution*, worth on that day and saleable for $1040, to the said complainants in trust, and also 34 shares of *Farmers and Merchants Bank* stock of the par value of $50, and that the same have ever since stood on the books of said Institutions in the names of the said complainants.

This respondent further saith, that on the 18th April, 1833, the said *Henry Wayman* also received from *Richard S. Hardesty*, the surviving partner of the firm of *Jones & Hardesty*, the sum of $1000, and gave therefor a receipt in the words and figures following, to wit:

" Received *Baltimore*, 18th April, 1833, of *Jones & Hardesty*, by the hands of *Richard S. Hardesty*, one thousand dollars, being part of the money due *Mrs. Anne Jones*.

HENRY WAYMAN, <em>Trustee.</em>"

But that the same was done without her knowledge or authority.

This respondent further saith, that the reason why the facts above mentioned do not appear in her original answer, is that her recollection of them at the time she gave the necessary information to her solicitors to enable them to draw it, was vague and indistinct, and entertaining the impression that they were not important to the present controversy, she took no pains to refresh her memory; but that having since in a conversation with her solicitors found that they were of moment, and that justice to her co-defendants, as well as to herself, required her to furnish the record, with all that she could ascertain on the subject, she has consulted all the sources of information at her command, and is thus enabled to make this detailed and accurate statement.

The *cestui que trusts* in remainder, infant children of *Samuel Jones*, also answered, when a commission was issued to take proof, but as the points ultimately decided by this court do not involve a consideration of the evidence, it is unnecessary to report it further than it is assumed and stated in the opinion of this court.

At September term, 1845, the Chancellor (BLAND) decreed that the *Farmers and Mechanics Bank of Frederick County* forthwith assign and transfer according to law, 222 shares of the stock of the said Bank unto the plaintiffs, *Henry Wayman* and *Richard G. Stockett,* to be held by them in trust as specified by the said order of this court of the 20th January, 1826. That the said bodies politic—the *Farmers and Mechanics Bank of Frederick County* and the *Bank of Westminster,* and the said *Anne Jones* for herself, and as administratrix of *Samuel Jones of Joshua,* deceased—account with the said plaintiffs of and concerning their said claims, as set forth in their said original and amended bills of complaint; that this case be and the same is hereby referred to the auditor, with directions to state an account or accounts accordingly from the pleadings and proofs now in the case, and from such other proofs as may be laid before him. In which account the auditor will estimate the stock herein directed to be transferred at its par value of fifteen dollars per share; and he will then charge the said administratrix with the whole amount for which her intestate sold the said stock, and the dividends which have been declared on that number of shares after the day of the said transfer, and before the day when the transfer shall have been made to the said plaintiffs as herein directed, so as to shew the amount with which the said Banks are chargeable, over and above the par value of the said stock, as well as the amount for which they are entitled to obtain reimbursement from the estate, if any, of the said *Samuel Jones of Joshua,* deceased, and the amount of the dividends of the said quantity of stock which might have been received and paid over to the said *Anne Jones,* but for her having improperly united in the grossly fraudulent transfer so as aforesaid made by her and her husband, together with the profits made by the said sale of the said stock above its par value, must be awarded to the said trustees, to be by them invested in their own names in trust as aforesaid, and as it was owing to the fraud or blunder of the then *Bank of Westminster,* that in the year 1826, the legal title to the said stock was not truly placed upon its books in the name of the plaintiffs, *Wayman* and

*Stockett,* as that institution was bound to have done, according to the express terms of the power of attorney then presented to it for that purpose, it became chargeable by having thus improperly left the way open for *Jones* and wife to perpetrate the aforesaid gross fraud, by the said transfer of the 14th June, 1830, and therefore the auditor will state the whole amount of the liability of the said defendants, and then apportion the same between the said two Banks as nearly as may be, according to the provisions of the act of 1829, ch. 35. And the aforesaid parties are hereby authorised to take testimony in relation to the said accounts. And it is further adjudged, ordered and decreed, that the said original and amended bills of complaint be and the same are hereby as against the said *Wm. M. B. Wilson, John J. Wilson, Jonathan T. Wilson,* and *Richard S. Hardesty,* dismissed with costs.

The Chancellor assigned as the ground of his decree, that neither of these banking institutions, either before or since their separation, can be deemed and treated as trustees to any extent, or for any purpose whatever, as by the terms of the legislative enactments under which they or either of them have heretofore acted or may now act, they can have no concern with any other than the legal title to their stock, which alone they have been allowed to place upon their books, and to transfer in the manner prescribed, and such legal title having in this instance been designed and declared to be for the protection of the interests of the *cestui que trusts,* these banking institutions are liable for not having placed upon their books that legal title in the name of these trustees, as the assignees thereof, according to the express terms of the power of attorney under which they acted. The mode of transfer having been prescribed and directed to be made under the supervision of the corporation, it acts at its peril as to the authority of such transfer and all other like consequences. That *Anne Jones* having participated in the fraudulent transfer of the 14th June, 1830, whereby the interests of the *cestui que trusts* in remainder might have been wholly lost, and were certainly put in great jeopardy; she has thus divested herself for the benefit of such

*cestui que trusts* in remainder of all claim to any dividends after that act, and before its wrong has been repaired. No fraudulent or improper conduct has been proved against the defendants, *Wm. M. B. Wilson, John J. Wilson, Jonathan T. Wilson* and *Richard S. Hardesty.*

From this decree, the defendants (except the *Wilsons*) appealed to this court.

The cause was argued before ARCHER, C. J., DORSEY, CHAMBERS, MAGRUDER, and MARTIN, J.

By McLEAN, MAULSBY and McMAHON for the appellants, and

By RANDALL and ALEXANDER for the appellees.

ARCHER, C. J., delivered the opinion of this court.

The complainant, *Wayman*, one of the trustees, having received large sums of money for the purpose of repairing the injury which the trust estate has sustained in the transfer of the stock belonging to the trust estate, and being thus, himself, liable to account with the trust estate, for the moneys thus by him received, could not as a complainant be entitled to a decree without such accounting.

The authorities cited establish the power of the court to cause him to assume a different position in the controversy, and that he might be made a defendant instead of a plaintiff, that justice between the parties may be effectuated.

Such a course would, however, be attended with delay, and we do not deem such a proceeding necessary in this case. In 1 *Keen,* 618, the master of the rolls in delivering his judgment says: "there have been cases in which the court, with the view to substantial justice, has overcome the difficulties arising from a misjoinder of plaintiffs. In the case of *Mosley vs. Taylor* before *Sir William Grant,* and which is cited in 2 *Young & Jer.* 520, under the name of *Mosley vs. Lord Hawke,* a tenant for life, on whose instigation and for whose benefit a breach of trust had been committed, was joined as plaintiff with the other *cestui que trusts* in a bill against the trustees, who objected to

354     CASES IN THE COURT OF APPEALS

Farmers and Mechanics Bank et al. *vs*. Wayman and Stockett.—1847.

any relief being granted in that state of the record; but the objection was overruled, and a decree made against the defendant, and the offending tenant for life, who was one of the plaintiffs." This authority would justify a decree against *Wayman*, one of the plaintiffs, for any sum which may be found to be due from him, without the necessity of a change in the proceedings.

The complainant, *Wayman*, should be made to account for all the moneys received by him, and for the stocks transferred to him in part satisfaction for the wrongful transfer of the property of the trust estate.

It does not clearly appear to us from the proceedings in the cause, in what manner, and in what character, the stock of the Savings Institution was transferred by the administratrix of *Samuel Jones* to him; whether as security merely for the claim of the trustees against the estate of her husband, or in part payment of the same. Nor does it appear to us, satisfactorily, if the same had been transferred merely as a security, and not in payment, whether any act of *Wayman*, for which he could be held accountable, conduced to the loss consequent upon the failure of that institution.

We may likewise observe, that there is some obscurity in the record in relation to the amount of *Farmers and Merchants Bank* stock, which was transferred by *Mrs. Jones* to the trustees, to repair the injury arising from the transfer of the stock of the *cestui que trusts*.

From the above considerations, we think it would be premature to pronounce any judgment in respect to these stocks against *Wayman*, but shall leave this matter for investigation in the Court of Chancery, when the account shall be taken.

We shall also leave open the question, what interest, if any, shall be charged against *Wayman*, as when the account shall be taken, other evidence may be adduced than that which the record before us now furnishes.

For such sum, if any, as upon such accounting shall happen to be due from *Wayman*, he should be held responsible to the trust estate.

The administratrix of *Samuel Jones* should be held accountable in due course of administration for such sum as the complainant shall be unable to recover from *Wayman*, to the extent of the assets which have come to her hands.

The injury which the trust estate has sustained will be repaired by the payment of a sum, equivalent to the price at which the stock was sold, when the transfer was made by *Jones* and wife.

When a sum equivalent to this shall be paid, it should be invested for the benefit of the *cestui que trusts* under the will of *Larkin Shipley*, as well *Mrs. Jones*, as her children. It is true *Mrs. Jones* participated in the transfer of this stock, but she was a *feme covert* under the dominion of her husband, and ought not on this account to be visited with penalties or forfeitures. She claims herself nothing on account of dividends; but if the fund is made good, we can perceive nothing in her situation, or the circumstances surrounding the transfer, which should forfeit her interests in the trust estate for the purpose of swelling the interests of the *cestui que trusts* in remainder. Forfeitures are certainly not viewed in a favorable light by a court of equity, and of all cases, this would seem to be the least suitable for the application of such a principle.

If in stating the account against *Wayman*, and charging him with such interest as his conduct may justify, the balance found due from him, when added to the sums paid into court, shall be found to be greater than will be necessary to reinstate the trust estate, the surplus thus created should be decreed to *Mrs. Jones.*

If by such accounting by *Wayman*, and by *Mrs. Jones* administratrix of *Jones*, such a sum should not be found due from both, as added to the sum paid into court, will be sufficient to reinstate the trust estate to the amount of the stock transferred by *Jones* and wife, then we are of opinion that the balance necessary to accomplish this object should be paid by the *Farmers and Mechanics Bank of Frederick*, and by the *Westminster Bank*, and that should the decree against *Wayman* or the administratrix of *Jones* be unavailing in yielding to the

*cestui que trusts* the amount which they shall be decreed to pay, then the said Banks ought to be held responsible for any deficiency that may occur.

In thus determining the ultimate responsibility of the Bank, we proceed to assign the reasons which have conducted us to this conclusion.

It is unnecessary to enquire whether a court of equity could entertain jurisdiction as against the Banks, over the subject matter of this claim, no such question having been raised in the Court of Chancery, and this court being prohibited by the act of 1841, ch. 163, from allowing any objection to be urged to the jurisdiction of the court below, when no such objection was there taken.

The stock in controversy was transferred on the books of the *Bank of Westminster* on the 8th April, 1846, to *Stockett* and *Wayman*, as trustees under the will of *Larkin Shipley*, for the benefit of *Anne Jones*, wife of *Samuel Jones*, during her natural life, and after her death for the purposes prescribed in said will, and pursuant to an order of the Chancery Court, dated 20th January, 1826.

Thus the *Bank of Westminster*, by this transfer, had notice of the trusts with which the stock was clothed, and that the complainants were the legal proprietors of the stock, and its officers being the trustees of the stockholders, could not without making the Bank responsible, by any negligence or mistake allow the title to pass to the stock by a transfer by any other persons than the trustees, without involving the Bank in responsibility.

This Bank continued its operations, but with a change of name to the *Farmers and Mechanics Bank of Frederick*, and with a change of the location of the mother Bank to *Frederick*, and a change of the branch from *Frederick* to *Westminster*.

By the act of 1829, ch. 35, the mother Bank and its branch at *Westminster* were made independent of each other, and on the application of the stockholders each was incorporated as a separate and independent Bank.

By the act of 1826, ch. 107, sec. 12, it was directed that

books should be kept at *Frederick,* in which should be fairly entered the names of the stockholders, and the amount of stock belonging to each, and transfers should be made on the books of the Bank on proper application by the stockholders.

Such a stock list as was demanded by this law, was not kept by the Bank, in consequence of which the Bank as it was then incorporated, consisting of the mother Bank at *Frederick* and its branch at *Westminster,* would have become responsible for any injury which had proceeded from such neglect; and had the transfer been made before the Banks became independent of each other, by the charters granted to each, by the act of 1829, ch. 35, the responsibility of the Bank as then chartered, would have been beyond all question.

In consequence of the error above adverted to, in not keeping an accurate stock list, the *Frederick Bank* allowed the transfer to be made, whereby the injury complained of has resulted, after the law of 1829, ch. 35, which created the two Banks, separate and independent Banks, and the inquiry is, whether, under such circumstances, both Banks are not responsible?

The act of 1829, ch. 35, by separating the mother Bank and its branch, and creating them independent Banks, did not affect their former liabilities, and such is the express declaration of the act. Now from the omission to form a proper stock list, the injury has resulted to the trust estate. For the consequences resulting from this neglect of duty, the *Bank of Westminster* became liable and remained subject to this liability, upon the change of its name to the *Farmers and Mechanics Bank of Frederick.* This responsibility was in no degree lessened by the separation of the Banks, but each after the separation, ought to be held liable in equity for this neglect of duty, in proportion to the capital of each. The present *Bank of Westminster* cannot throw the entire loss, if any is to happen, upon the present *Farmers and Mechanics Bank of Frederick,* upon the ground that this latter Bank permitted the transfer by *Jones* and wife to the *Wilsons,* because, the cause of that transfer was the neglect of duty in the former Bank, of

which the *Westminster Bank* was a constituent part, and on this account equity would seem to demand that she should participate in such loss as shall occur from the negligence adverted to.

It has been urged that lapse of time constitutes an available defence for the Banks. To this proposition we cannot agree. So far as the complainant, *Stockett,* is concerned, there is no evidence that he ever knew of the conversion and sale of the stock, until these proceedings were commenced. Nor is there any evidence that the *cestui que trusts* in remainder, were ever aware that they had been deprived of their property by the transfer of the stock, until the institution of these proceedings. There is therefore not the slightest ground to impute acquiescence. Besides, the *cestui que trusts*, except *Mrs. Jones,* had no immediate possessory title to the beneficial interest, and have not yet, as *Mrs. Jones* is still living, and therefore clearly, there could be in this case no bar from lapse of time.

Nor can the Banks claim exemption from the fact that *Wayman* may have been reimbursed. There is no proof that *Stockett* joined in any receipt which may have been given by *Wayman*, or that he, in any manner, ever sanctioned his receipt of the money paid by *Mrs. Jones.*

The decree of the Court of Chancery will be reversed, but without costs, and the cause remanded to that court for further proceedings.

For any costs incurred by the trustees by this decree, they ought to be allowed out of the trust fund.

DECREE REVERSED WITHOUT COSTS, AND CAUSE REMANDED.