# Winter *v.* Montgomery Gas-Light Co.

*Bill of Interpleader in Equity.*

1. *Stock of married woman, in name of husband as trustee; transfer with or without notice.*—When stock in a private corporation stands on its books in the name of the husband as trustee for the wife, and is transferred by him as trustee, the transferree is chargeable with notice of the wife's equitable rights; but, if he surrenders the certificate, procures the issue of a new one in his own name, and delivers it to the husband, with power of attorney indorsed, and the husband then transfers it to a creditor, with irrevocable power of attorney indorsed, the creditor is entitled to protection against the equitable rights of the wife, of which he had no notice, and may compel a transfer to himself on the books of the corporation.

APPEAL from the City Court of Montgomery, in equity.

Tried before the Hon. THOS. M. ARRINGTON.

This was a bill of interpleader, filed on the 14th October, 1886, by the Montgomery Gas-Light Company, a private corporation, against Alex. T. London as administrator of the estate of D. S. Schanck, deceased, Mrs. Mary E. Winter, Joseph S. Winter, her husband, and Jno. Gindrat Winter, both in his own right and as trustee of his mother, Mrs. Mary E. Winter; and sought to compel the defendants to interplead, and to contest between themselves their respective rights to certain shares of stock, with accrued dividends, which London asked to have transferred and paid to himself as administrator, and which were claimed by Mrs. Winter. The defendants each answered, propounding their respective claims, and submitting to the jurisdiction of the court; and a formal decree of interpleader was entered.

The original certificates for the stock, with other shares, were in the name of "J. S. Winter, trustee for Mary E. Winter," and were so entered on the books of the company. On the 30th March, 1871, the stock was transferred by J. S. Winter, "trustee, &c.," on the books of the company, to Jno,

Gindrat Winter, who, on the 21st August, 1871, on surrender of the old certificates, procured the issue of two new certificates to himself, being the certificates here in controversy; and a few days afterwards he delivered these certificates to J. S. Winter, with indorsement under seal, dated August 25th, 1871, in these words: "For value received, I hereby constitute and appoint Joseph S. Winter my true and lawful attorney, for me and in my name to transfer, set over, and assign on the books of the Montgomery Gas-Light Company, the within described two shares of the capital stock of said company, to such persons, and for such consideration as he may elect, with full power in the said ———— to make and appoint one or more proxies or attorneys under him, with like powers and authority to make and effect the transfer aforesaid of the said named shares." On the next day, August 26th, J. S. Winter, by indorsement under seal, in form of an irrevocable power of attorney, transferred the certificates to Daniel S. Schanck, of New York city, as collateral security for three notes of that date, together amounting to $500; authorizing him to surrender the certificates, and have new certificates issued in his own name, or to transfer them with like powers to any other persons, or to sell them after default made in the payment of the notes; and the indorsement contained a stipulation in these words: "And I covenant and agree with the said D. S. Schanck that I am the lawful owner and holder of said stock, and have full right and authority to sell and dispose of the same."

D. S. Schanck died on the 5th May, 1872, in New York city, where he resided. The record does not show when letters of administration on his estate in Alabama were granted to London; but his demand for a transfer of the stock on the books of the company was made only a few months before the bill was filed. An answer was filed by Jno. Gindrat Winter, disclaiming all personal interest in the subject of controversy, denying all recollection of the facts alleged, and stating that, if he signed the papers as alleged, it must have been done only at the instance of J. S. Winter. An answer was filed by J. S. Winter, admitting the transfer of the stock to Schanck as collateral security, but alleging that the transfer was made without the knowledge of his wife, and that the debt to Schanck had been long since paid; and he claimed a set-off against Schanck's estate, for damages on account of an attachment sued out against him by Schanck, founded on the debt evidenced by the notes. An

35

answer was filed in the name of Mrs. Winter, claiming the stock as belonging to her statutory estate, denying all knowledge of the transfers alleged in the bill, and adopting the answer of J. S. Winter as to the claims of payment and set-off.   London, in his answer, denied all knowledge of Mrs. Winter's equitable right to the stock, claimed that his intestate was a purchaser for value without notice, and pleaded the statute of limitations against Mrs. Winter's claim.   The answers of J. S. Winter and Mrs. Winter were afterwards amended by pleading the statute of limitations against the claim of London.

The City Court sustained the claim of London, and rendered a decree in his favor; and this decree is here assigned as error by J. S. Winter and Mrs. Winter, "severally and respectively."

WATTS & SON, for appellants.—(1.) The stock was the statutory estate of Mrs. Winter, and it could only be disposed of in the mode prescribed by statute.—Cases cited in 3d Brick. Digest, 552, § 140.   A conveyance of the wife's *choses* in action, by the husband, without her assent, is void. *Smythe v. Oliver*, 31 Ala. 50.   The wife's title can only pass by the joint conveyance or transfer of the husband and herself.—*Hammond v. Thompson*, 56 Ala. 580; *Blythe v. Dargin*, 68 Ala. 370.   Neither her presence when a sale or transfer of her property is made by the husband, nor her assent thereto, will operate to pass her title.— *Williams v. Auerbach*, 57 Ala. 90; *Evans v. English*, 61 Ala. 416.   (2.) The statute is strictly enabling, and only confers the power to sell.—*Peebles v. Stolla*, 57 Ala. 53; *Shulman v. Fitzpatrick*, 62 Ala. 571.   A mortgage of the wife's property to secure the debt of the husband, is absolutely void, though signed by husband and wife, and even though given for money borrowed to purchase necessary family supplies.—*Heard v. Hicks*, 82 Ala. 484; *McIntosh v. Parker*, 82 Ala. 238; 3 Brick. Digest, 153, § 553; *Chapman v. Abrams*, 61 Ala. 108; *Gilbert v. Dupree*, 63 Ala. 331; *Garrett v. Lehman, Durr & Co.*, 61 Ala. 391; *Voltz v. Voltz*, 75 Ala. 555. Here, the stock was pledged as collateral security for the debt of the husband; and the pledgee acquired no more title than the pledgor had, which was none at all.— *Weaver v. Barden*, 49 N. Y. 286; 96 U. S. (6 Otto), 193; *Jordan v. Smith*, 83 Ala. 299.   (3.) The statute prescribes the mode by which stock owned by married women may be transferred

[Winter v. Montgomery Gas-Light Co.]

and conveyed, and prohibits any other mode.—Code, 1876, § 2161; *National Bank v. Hartwell*, 84 Ala. 379. At common law, and by statute, shares of stock are personal property, and the certificates are not negotiable.—Code, 1876, § 2041; 3 Brick. Digest, 165, § 135; *East B. Land Co. v. Dennis*, 85 Ala. 565; Cook on Stockholders, §§ 412–13. The doctrine of innocent purchaser for value, as to personal property, only applies to negotiable paper.—*Fairbanks v. Eureka Co.*, 67 Ala. 109; *Medlin v. Wilkerson*, 81 Ala. 147. (4.) The stock was transferred without the knowledge or assent of Mrs. Winter, and she has done nothing to estop her from asserting her rights. The protection accorded to innocent purchasers of stock is based, in most cases, on the doctrine of estoppel.—Cook on Stock, &c., §§ 416, 473. (5.) The statute of limitations of six years bars a recovery. *Underhill v. Insurance Co.*, 67 Ala. 45. Neither London, nor his intestate, has ever been in possession of the stock, but they have only held the certificates.—*Campbell v. Woodstock Iron Co.*, 83 Ala. 358; *Nabring v. Bank of Mobile*, 58 Ala. 208.

TOMPKINS & TROY, and A. A. WILEY, *contra*, cited *Bank of Utica v. Smalley*, 2 Cowen, 770; *Gilbert v. Manchester Co.*, 11 Wend. 627; *Kortright v. Com. Bank*, 22 Wend. 362; *Railroad Co. v. Schuyler*, 34 N. Y. 80; *Saltus v. Everett*, 20 Wend. 268; *Mowrey v. Welsh*, 8 Cow. 238; *Gregg v. Wells*, 10 Ad. & El. 90; *Pickering v. Bush*, 15 East, 38; *Brewster v. Seine*, 42 Cal. 139; *Thompson v. Toland*, 48 Cal. 99; *Winter v. Mining Co.*, 53 Cal. 428; *Atkinson v. Atkinson*, 8 Allen, 15; *Dodds v. Hills*, 2 Hem. & M. 424.

CLOPTON, J.—The uncontroverted facts are: that on March 30, 1871, there stood on the books of the Montgomery Gas-Light Company, a corporation, thirty shares of its capital stock, in the name of "J. S. Winter, trustee for Mary E. Winter." On that day, J. S. Winter, trustee, assigned the thirty shares to J. Gindrat Winter, which transfer was registered on the books of the company. On August 21, 1871, certificates for the five shares in controversy, being part of the thirty shares, were issued by the company to J. Gindrat Winter, who, on the 25th day of the same month, delivered them to J. S. Winter, indorsing on each a power of attorney, authorizing him to transfer, set over, and assign on the books of the company the shares, to such person or

persons, and for such consideration as he may elect, with full power to appoint one or more persons with like powers and authority to make and effect the transfer of the shares. On August 26, 1871, J. S. Winter, by instrument in writing, assigned and transferred the certificates of shares, with all dividends, to D. S. Schanck, to secure the payment of three notes, amounting in the aggregate to five hundred dollars, his individual debt, with irrevocable power of attorney to Schanck to surrender the stock, and have the same issued to him in his own name.

It appears from the pleadings and evidence that the stock was the statutory separate estate of Mrs. Winter. It is insisted, that the transfer to J. Gindrat Winter is void, for the reason that, under the statutes then in force, no valid sale or conveyance of the separate estate of a married woman could be made, other than by an instrument in writing, executed by her husband and herself jointly, attested by two witnesses, or acknowledged as provided by law. It will be admitted, that J. S. Winter, holding the stock as trustee for his wife, and as her statutory separate estate, had no right or authority to sell and transfer, or to pledge it for his individual debt; also, that J. Gindrat Winter having notice of the trust, both of them are responsible to the *cestui que trust*, for the unauthorized use and disposition of the stock. The insistence of counsel would be sustained, if the question involved only the validity of the transfer to J. Gindrat Winter, or his transferree with notice. But the question presented by the record reaches beyond this, and is, when a certificate of stock is accompanied by a power of attorney indorsed thereon, by the person in whose name it is issued, authorizing the attorney to transfer it to any person, and for such consideration as he may elect, will the title of a purchaser for value, without notice of any intervening equity, be protected? The general rule is, that when the legal title and apparent unlimited power of disposition is vested in a person, the rights of a purchaser from him, for a valuable consideration, without notice of a secret trust upon which the property is held, are unaffected; the purchaser in such case acquires an equity equal in dignity to the outstanding equity of which he has no notice. This principle is applicable to the sale and transfer of certificates of stock. It has accordingly been held, that a power of attorney on a certificate of stock, authorizing its transfer to any person, renders the stock transferable by delivery;

[Winter v. Montgomery Gas-Light Co.]

and if the holder of such certificate is shown to be a purchaser for value, without notice of an outstanding equity, from the person to whom it was issued, or his transferree, his title as such owner can not be impeached. This principle, so far as we have discovered, is uniformly sustained by the authorities. We cite a few: *Turnpike Co. v. Ferree,* 17 N. J. Eq. 117; *Nutting v. Thomason,* 46 Ga. 34; *Brewster v. Seine,* 42 Cal. 139; *Weaver v. Barden,* 49 N. Y. 286; *Far. & Mec. Bank v. Wayman,* 5 Gill, 336.

The rule is, that as between two equities merely, the prior equity will prevail; hence, in order to give the purchaser precedence, unless under exceptional circumstances, the legal estate must be annexed to his equity. It is contended, that the purchaser of a certificate of stock obtains the legal title only by a registry of the transfer on the corporate books, and that the transfer to Schanck not having been registered, the equity of Mrs. Winter is superior. By an examination of the cases, in which it has been expressed that a transfer on the books of the corporation is essential to pass the legal title, it will be seen that the expression was used in reference to the construction and purpose of the statute making the stock of corporations transferable on the books, and to protection against creditors and subsequent purchasers. In *Union Nat. Bank v. Hartwell,* 84 Ala. 379, we said, that to this end, and for this purpose, the transfer must be made in the mode prescribed by the statute; and while a transfer on the books is essential to pass the legal title and operate as notice, a purchaser of the stock, though no registry is made on the books, may acquire such right thereto as a court of equity will enforce, and compel its transfer on the books. And in *Campbell v. Woodstock Iron Co.,* 83 Ala. 351, speaking of the transfer of a certificate of stock without registration on the books, it is said: "If in proper form, and otherwise unobjectionable, such a conveyance is good and valid between the parties, although it may be void as against *bona fide* creditors, or subsequent purchasers without notice, and although, as against the corporation itself, it may convey an equitable title, conferring no right to vote, draw dividends, or other like incidents of ownership."—*Berney Nat. Bank v. Pinckard,* 87 Ala. 577.

What title passes, as between the parties, is a different question. The registry on the books of the company of J. Gindrat Winter as the owner, and the issue of new certificates in his name, vested the legal title in him, and clothed

him with all the *indicia* of ownership, and the apparent right of disposition. As between him and Schanck, his transfer passed to the latter the title he possessed, and armed the latter with power to compel a transfer on the corporate books; and his representative demanded October 5, 1886, the transfer to be registered. Whether, in such case, the title of Schanck will be upheld against intervening equities, arose and was expressly decided in *Dodds v. Hills*, 2 Hem. & Mill. 424, in which case, Smith, at the time he took the transfer, had no notice that Hills held the stock in trust, but received notice before he sent it for registration. It is said: "Although it is true that, as between him and the company, Smith did not become the owner until after registration, nothing but his own act was necessary to make him complete master of the shares. His position was like that of a person to whom an estate is conveyed, to become legally vested on the performance of some condition, such as the making of a demand, or the like; and in such a case notice of a trust would not prevent the subsequent performance, or effect of this condition." And in Cook on Stock and Stockholders, § 325, the author, after alluding to the rule in England, remarks: "In this country, a different rule prevails, and it is accepted and assumed as elementary, that a *bona fide* purchaser for value, of stock belonging to a trust estate, and sold in breach of trust, is nevertheless protected in the purchase, although he has not registered the transfer on the corporate books."

The case of the *East Birmingham Land Company v. Dennis*, 85 Ala. 565, does not militate against this view. In that case, on the principle that a certificate of stock, indorsed in *blank* by the person to whom it was issued, is not a negotiable instrument, which may be regarded as well settled, it was held, that such certificate having been lost or stolen from the owner, without fault on his part, his right to it is superior to that of any other person, who may acquire it by purchase for value from any other holder. It will be observed, that the finder or thief had no apparent right or claim, no color of title. The blank in the power of attorney was not filled in. The transferror was not possessed of the legal title, or any *indicia* of ownership, or the apparent power of disposition. Schanck derived title to himself directly from the last registered stockholder; the cases are not parallel. By J. S. Winter's transfer to J. Gindrat Winter, causing it to be registered, and by the issue of new

[Winter v. Montgomery Gas-Light Co.]

certificates in his name by the company, the transferror to Schanck was vested with the legal title regular on its face, without any indications to awaken suspicion. He acquired the title which his transferror had, but no better, except that it was discharged from the trust—a legal title sufficient to his protection against prior latent equities. In *Salisbury Mills Co. v. Townsend,* 109 Mass. 115, it is said: "While a transfer of shares by an assignment of the certificates can be effective only between the parties to the assignment, it has been held, in accordance with the usages of trade, that the indorsement of the certificates invests the assignee with the legal title to the interest so assigned, as against all persons except the corporation." It was ruled that a *bona fide* purchaser, through *mesne* conveyances starting from a trustee who sells the stock in breach of a trust, is protected.

While certificates of stock are not negotiable instruments, when indorsed in blank, they are nevertheless intended to pass from hand to hand by delivery. The purchaser looks to the genuineness of the certificates, and the *indicia* of ownership appearing on their face; he is without means to ascertain the rights of his vendor. If the purchaser were required to look beyond the last registry on the books of the corporation, to ascertain whether there are any equities, or whether the stock was held in trust, facility in disposing of them would be greatly obstructed, if not destroyed. Hence, a purchaser for value from the party who is the last registered stockholder, and to whom new certificates have been issued, without notice, is not affected by the rights of holders back of the registry.—Cook on Stock & Stockholders, §§ 369, 443. There is no pretense that Schanck had any notice of Mrs. Winter's equity, and in the instrument assigning the certificates to him, J. S. Winter covenants and agrees that he is the lawful owner and holder of the stock, and has just right and authority to sell and dispose of the same. The company is estopped to deny Schanck's right and title, and to his equity a legal title was annexed sufficient to give him precedence over the equity of Mrs. Winter, of which he had no notice, and which was back of the registry to J. Gindrat Winter.—*Mandlebaum v. N. Amer. Min. Co.,* 4 Mich. 465.

This conclusion renders unnecessary the consideration of the question arising on the statute of limitations.

Affirmed.